STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

*In re* **A.N., D.N., S.N., and B.N.**

**No. 18-0351** (Monongalia County 15-JA-86, 15-JA-87, 15-JA-88, and 15-JA-89)


# MEMORANDUM DECISION


Petitioner Mother J.N., by counsel Cheryl L. Warner, appeals the Circuit Court of Monongalia County's May 9, 2018, order terminating her parental rights to A.N., D.N., S.N., and B.N.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Ashley V. Williams Hunt, filed a response on behalf of the children, also in support of the circuit court's order, and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in failing to make specific findings in the adjudicatory and dispositional orders, adjudicating her as an abusing parent with regard to A.N. and D.N., and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2015, the DHHR opened a case with petitioner due to poor home conditions and began providing services. In November of 2015, the DHHR filed a child abuse and neglect petition against petitioner after she was found passed out in the front seat of her car with her two youngest children, S.N. and B.N., in the backseat. Upon searching the car and petitioner, officers located hypodermic needles and marijuana.[2] Petitioner also failed a field sobriety test. The children were described as hungry and dirty. Petitioner was arrested and charged with child

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The parties acknowledge that petitioner is a diabetic and that the needles were never proven to contain an illegal substance.

neglect, second offense driving under the influence, and driving on a suspended license for driving under the influence. S.N. and B.N. were removed from petitioner's care at that time; however, the two older children were permitted to remain in the care of their aunt and grandfather, with whom they had been residing for some time.

The circuit court held an adjudicatory hearing in January of 2016. The circuit court heard the testimony of the arresting officer, a DHHR worker, and petitioner. However, because the blood test results taken pursuant to petitioner's arrest had not yet been received, the circuit court held its ruling in abeyance.

Petitioner's blood test results were received in July of 2016 and were negative for alcohol, but were inconclusive for marijuana. By that time, petitioner had already been receiving services such as parenting classes, adult life skills classes, and supervised visitation for several months. In August of 2016, petitioner filed a motion requesting a formal preadjudicatory improvement period, which the circuit court granted. As part of the terms and conditions, petitioner was required to continue participating in parenting and adult life skills classes, attend multidisciplinary team ("MDT") meetings, submit to random drug screens, comply with the family case plan, and submit to a psychological evaluation and follow any of the resulting recommendations. At some time during the proceedings, petitioner's family members returned the two older children to her care with the DHHR's permission. However, at the end of her preadjudicatory improvement period, all parties agreed that petitioner was not ready to resume caring for the younger children and they were continued in their foster care placement.

In December of 2016, the circuit court held a second adjudicatory hearing wherein it took judicial notice of the testimony presented at the January of 2016 hearing and allowed the parties another opportunity to present further evidence regarding adjudication. After hearing evidence, the circuit court found that petitioner had neglected her children and adjudicated her accordingly.[3]

The circuit court held a dispositional hearing in January of 2017. Petitioner filed a motion requesting a post-adjudicatory improvement period. The DHHR and the guardian expressed some concerns regarding petitioner's progress as she had not paid several of her utility bills or gained employment. Further, the guardian expressed concern regarding the cleanliness of petitioner's home and reported possible issues with cat urine and feces. Ultimately, the circuit court granted petitioner's request for a post-adjudicatory improvement period and continued the proceedings.

A review hearing was held in April of 2017. The DHHR expressed concerns over petitioner's ability to address issues proactively. Specifically, the DHHR stated that petitioner complied with any direction given by the DHHR but did not demonstrate the ability to properly parent the children without significant prompting. As an example, the DHHR noted that A.N. developed pinworms and petitioner did not address the issue until prompted by the MDT. The

---

[3]Although the record is unclear, the parties seem to agree that petitioner was only adjudicated in regard to S.N. and B.N.

guardian again raised concerns with conditions of the home, including filthy conditions and cat urine.

A second review hearing was held in June of 2017. Petitioner requested a three-month extension to her post-adjudicatory improvement period. The DHHR did not oppose the motion, but requested additional services for petitioner so that she could better learn how to supervise the four children together. Specifically, the DHHR noted that petitioner had trouble with D.N., who exhibited difficult behaviors and excessive aggression towards the younger children during their supervised visits. The circuit court granted the motion and continued the proceedings to October of 2017, when petitioner was further granted a post-dispositional improvement period.

In February of 2018, the circuit court held a dispositional hearing. The DHHR requested permission to amend the petition with regard to A.N. and D.N., which the circuit court granted. The amended petition was filed later that month, and the DHHR alleged that petitioner abused and neglected A.N. and D.N. by failing to provide adequate supervision, sanitary living conditions, and proper hygiene and clothing. Regarding proper supervision, the DHHR alleged that petitioner failed to properly supervise the children by spending large amounts of time locked in her bedroom or on the phone, leaving her without minutes for her cellphone and out of reach from school personnel who tried to reach her with emergency situations. As an example, the DHHR noted that petitioner failed to properly supervise D.N., who set fire to a pillow when petitioner was in her bedroom, stole several iPads from his school, and threatened to harm his teachers. Petitioner did not respond to school personnel's attempts to address the situation and did not proactively intervene during D.N.'s outbursts. Regarding the allegations of unsanitary home conditions, the DHHR alleged that the home was filled with garbage, extreme clutter, and cat urine. School personnel reported that D.N. often came to school dirty and smelling of cat urine. After the petition's filing, A.N. and D.N. were removed from petitioner's care and placed in a foster home.

The circuit court held an adjudicatory hearing on the amended petition in April of 2018. The DHHR presented the testimony of two witnesses, both of whom opined that petitioner had not made meaningful progress despite the provision of significant services. A service provider testified that petitioner did not make progress in the one and a half years she had been providing services. Petitioner was argumentative and resistant to suggestions, failed to obtain employment, and remained dependent on her family to pay her bills. Also, petitioner had not timely addressed the issues of cat urine in her home. A visitation supervisor testified regarding the conditions of the home and noted that petitioner did not adequately address the roaches, bed bugs, gnats, clutter, and garbage in the home. Further, when petitioner cared for all four children, she was unable to properly supervise all of them.

Petitioner testified that she did not benefit from adult life skills classes and had no idea why she was not receiving any job offers. Petitioner also stated that school personnel had never attempted to contact her. Petitioner then presented the testimony of her therapist, who opined that petitioner was compliant with services. The therapist described petitioner's home as "less than pristine" and disorganized, but not filthy. The therapist had noticed the odor of cat urine but believed it had lessened since petitioner had the cats neutered and removed a sofa from her home. She further reported only seeing one bug on one occasion.

3

The guardian presented the testimony of D.N.'s special education teacher, who stated that she had trouble reaching petitioner to talk about D.N.'s behavioral issues. The teacher stated that the child had issues with hygiene and appeared disheveled, wore ill-fitting clothes, and smelled of cat urine. When the teacher was able to contact petitioner, their interactions were negative. The teacher also noted that petitioner ceased giving D.N. his medication, without medical authorization, and subsequently failed to notify the school of this change, which resulted in school personnel medicating him differently. After hearing evidence, the circuit court took judicial notice of the testimony presented during prior hearings and found sufficient evidence to adjudicate petitioner as an abusing parent in regard to all the children.

Later in April of 2018, the circuit court held a dispositional hearing wherein it took judicial notice of all prior testimony presented. A DHHR worker testified that the younger children had been in foster care since they were removed from petitioner's care in November of 2015. Petitioner continuously received services since that time, including parenting and adult life skills classes, assistance with transportation, supervised visits, and therapy. Indeed, petitioner participated in adult life skills classes on two separate occasions, one of which was solely focused on assisting petitioner find a job. Nevertheless, petitioner continued to lack insight, refused to acknowledge her responsibility in the abuse and neglect, and made excuses for her situation. Petitioner testified that she remedied the issues with her cats, cleaned her home, and obtained employment the week before the dispositional hearing. However, petitioner testified that she did not abuse or neglect her two older children and learned nothing from either her adult life skills or parenting classes.

After hearing evidence, the circuit court found that there was clear and convincing evidence that termination of petitioner's parental rights was in the children's best interests as petitioner had not corrected the conditions of abuse or neglect, nor had she demonstrated that she would be able to correct them in the near future. The circuit court noted that its decision was "not based on any one thing" but was based on petitioner's overall performance in the case. Specifically, petitioner failed to proactively address issues in her home without substantial prompting by either the guardian or service providers. According to the circuit court, petitioner's inaction demonstrated that she was incapable or unwilling to parent the children. Despite having participated in services for three years, petitioner did not demonstrate the ability to correct the issues which led to the petition's filing and the circuit court found "no likelihood that they would be resolved." Regarding petitioner's employment, the circuit court noted that her ability to maintain a job for one week did not demonstrate that she was willing to "do what she needs to do" if the children were placed in her care and the case closed. The court also adopted the findings of the guardian's report as its own. Ultimately, after finding that termination was the least-restrictive disposition, the circuit court terminated petitioner's parental rights. It is from the May 9, 2018, dispositional order that petitioner appeals.[4]

---

[4]The biological fathers' parental rights remain intact and the DHHR is seeking termination of their rights. The permanency plan for the children is adoption in their respective foster homes.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent with regard to her older children, A.N. and D.N. First, petitioner argues that the circuit court failed to make any findings of fact on the record or in the adjudicatory order, rendering her adjudication "wholly inadequate" and necessitating vacation of the order. Petitioner also argues that there was insufficient evidence of neglect. According to petitioner, her therapist testified that her home was appropriate. Further, she states that there was no proof that the children were "nutritionally deprived, without proper clothing or adequate shelter, educationally neglected, improperly supervised, or suffering medically from inattention." We disagree.

We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

5

Pursuant to West Virginia Code § 49-1-201, an "'[a]busing parent' means a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Further, a

> "[n]eglected child" means a child . . . [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

*Id.* Here, sufficient evidence exists to demonstrate that petitioner neglected A.N. and D.N. due to her lack of care and proper supervision. Despite knowing of the issue with the unsanitary conditions of her home since January of 2017, petitioner failed to address the issue until over a year later, after the amended petition raising the issue had been filed. The guardian and the MDT spoke to petitioner about the odor of cat urine in the home; however, petitioner did not take affirmative steps to address the issue in a timely manner. Indeed, a DHHR worker testified that the children smelled "awful" upon their removal from the home, and D.N.'s teacher testified that D.N. was often disheveled, dirty, and malodorous at school. Further, the record demonstrates that petitioner failed to properly supervise her children. D.N. threatened his teachers, stole four iPads from school, lit a pillow on fire, and was extremely aggressive towards the younger children during supervised visitation. Yet, despite the provision of services designed to develop her parenting skills, petitioner was unable to satisfactorily address these issues. Additionally, A.N. reported to a DHHR worker that petitioner was often either on her phone or locked in her bedroom, leaving the children to care for themselves. Testimony established that school personnel had difficulty contacting petitioner to discuss D.N.'s behavioral issues and, when they did, petitioner's interactions were resistant and negative. As such, the record clearly contains sufficient evidence to adjudicate petitioner as an abusing parent under the definitions contained in West Virginia Code § 49-1-201.

To the extent that petitioner argues that her adjudication should be vacated due to the circuit court's failure to provide sufficient findings, we find no error in light of the substantial evidence of her neglect contained in the record. We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Accordingly, because the record is clear that sufficient evidence existed to adjudicate petitioner as an abusing parent, we find that the process has not been substantially disregarded or frustrated such that vacation of the order is required. Petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in terminating her parental rights. Petitioner first alleges that the circuit court failed to make sufficient findings in terminating her parental rights. Secondly, she argues that there was insufficient evidence to terminate her parental rights and, instead, avers the evidence adduced at the dispositional hearing shows that she is able to provide a home that meets the basic needs for food, shelter, clothing, and supervision. We find petitioner's arguments to be without merit.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future" and when necessary for the children's welfare. According to this statute, "'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." West Virginia Code § 49-4-604(c)(3) goes on to provide that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

To begin, we find no error in the circuit court's findings regarding disposition. Contrary to petitioner's argument, the circuit court sufficiently set forth its findings and reasoning on the record as found in the dispositional transcript.[5] The circuit court noted that petitioner had received substantial services, yet did not demonstrate that she had corrected the conditions leading to the petition's filing. The court noted that petitioner was unable to affirmatively take steps to address issues that arose, demonstrating that she was either incapable or unwilling to properly parent the children. As a specific example, the circuit court noted that petitioner was consistently informed of the unsanitary issue of cat urine and its odor permeating through the house for approximately one year before she took any steps to have her cats neutered or remove the couch they sprayed on from the home. Moreover, the circuit court found that petitioner's ability to maintain employment for the week prior to the dispositional hearing did not demonstrate that she was able to "do what she needs to do" should the circuit court return the children to her care and close the case. Accordingly, the circuit court did make sufficient findings to support the termination of petitioner's parental rights.

Additionally, the record clearly demonstrates that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future

---

[5]Pursuant to Rule 36(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, "[a]t the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing *or on the record*, as to the appropriate disposition in accordance with the provisions of W. Va. Code § 49-4-604." (Emphasis added).

because petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help. As demonstrated above, petitioner began receiving services in March of 2015 due to the poor conditions of her home. Despite receiving services for nearly three years, petitioner failed to timely and adequately address the issues raised in the petitions. While petitioner eventually removed the urine-soaked couch from her home and obtained a job a week before the dispositional hearing, she failed to demonstrate that she meaningfully changed her parenting methods. In fact, at the dispositional hearing, petitioner testified that she did not learn anything from her parenting and adult life skills classes and, importantly, testified that she did not even believe she had abused or neglected her children. In addressing a parent's refusal to acknowledge the truth of the basic allegations against them, we have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Based on the evidence, petitioner failed to acknowledge the conditions of abuse or neglect and, despite having been provided significant time and resources to address the same, failed to make any changes in her parenting sufficient to warrant the children's return to her care. "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . ." Syl. Pt. 4, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting syl. pt. 1, in part, *In re R.J.M.,* 164 W. Va. 496, 266 S.E.2d 114 (1980)). Accordingly, we find no error in the termination of petitioner's parental rights.

Finally, although we affirm the circuit court's rulings regarding the petitioner, we nonetheless admonish the circuit court and the DHHR regarding unnecessary delay. It is ridiculous that even though this abuse and neglect case was pending in circuit court for nearly three years, the putative biological fathers' rights have not yet been addressed and, if appropriate, terminated. Issues surrounding unknown and absent fathers can and should be raised early in an abuse and neglect proceeding—this should not wait until the children are otherwise ready for adoption. As this Court explained, "[w]hen the Department has a situation in which apparently one parent has abused or neglected the children and the other has abandoned the children, both allegations should be included in the abuse and neglect petition. . . ." *In re Katie S.*, 198 W. Va. 79, 86, 479 S.E.2d 589, 596 (1996). "Delaying a determination on the issue of the father's abandonment allows this matter to linger while . . . [the children] remain in foster care, a situation we found 'ludicrous' in *Cristina L.*, 194 W.Va. [446] at 456, 460 S.E.2d [692] at 702 [1995]." *Katie S.*, 198 W. Va. at 87, 479 S.E.2d at 597. It is well-settled that "[u]njustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Unfortunately, the failure to timely address the fathers' parental rights in this case will cause additional, and wholly unnecessary, delay in the adoption of these four children.

8

Because the children are not eligible for adoption unless and until the rights of the biological fathers are terminated, and because a permanent placement has not been conclusively determined for D.N., this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 9, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:

**CONCURRED IN BY**:

9

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison